## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAX GOLD and JAKE GOLD

      Plaintiffs,

v.

SMITHSONIAN INSTITUTION and
PULSEWORKS, LLC,
a Georgia Corporation, registered and doing business
in the District of Columbia,

      Defendants.
_____/

## COMPLAINT
### and
### JURY DEMAND

Plaintiffs, Max Gold and Jake Gold, by and through their undersigned attorneys, file this Complaint for injunctive and declaratory relief, damages, costs, and attorneys' fees against Defendants, Pulseworks, LLC and the Smithsonian Institution, and as good grounds state as follows:

### PRELIMINARY STATEMENT

1.    This action arises as a result of Defendants' discriminatory actions perpetuated against individuals with disabilities at the defendant Smithsonian Institution's Air & Space Museum in Washington, D.C.  Specifically, and as laid out in further detail below, Defendants have violated the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and the District of Columbia Human Rights Act ("DCHRA") by, among other things:

    a)    failing and intentionally refusing to reasonably accommodate Plaintiff's disability;

    b)    failing and intentionally refusing to establish policies and procedures whereby

disabled individuals are properly accommodated; and

c)      causing Plaintiffs great emotional distress, humiliation and shame by reason of disability.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter under the following:

a)      28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States;

b)      28 U.S.C. § 1343, as this is a civil action seeking to redress the deprivation, under color of an State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the United States and/or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

c)      28 U.S.C. § 2201, as this is an action seeking to declare the rights and/or other legal relations of interested parties;

d)      28 U.S.C. § 2202, as this is an action seeking further necessary and proper relief based on a declaratory judgment and/or decree;

e)      28 U.S.C. § 1367, as Plaintiffs have invoked the supplemental jurisdiction of this Court to consider the state law claims alleged herein;

f)      Rule 57 of the Federal Rules of Civil Procedure, as this is an action seeking declaratory relief; and

g)      Rule 65 of the Federal Rules of Civil Procedure, as this is an action seeking injunctive relief.

3.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as all Defendants are located in and/or conduct business in this judicial district, and the events and/or omissions giving rise to the claims herein occurred in this district.

## PARTIES

4.     Plaintiff, Max Gold, is a citizen of the United States and currently resides in Merrick, New York.  Max suffers from a rare vascular anomaly birth defect that caused his right leg to be amputated as a child, and has left him dependent on a wheelchair.  Max is a qualified individual with a disability as that term is defined by the Rehabilitation Act, the ADA, and the DCHRA.

5.     Plaintiff, Jake Gold, is a citizen of the United States and currently resides in Merrick, New York.  Jake is plaintiff Max Gold's brother and caregiver in certain situations.

6.     Defendant, Pulseworks, LLC ("Pulseworks"), is a Georgia Corporation registered and doing business in the District of Columbia, as an agent/independent contractor of the Smithsonian Institution.  At all times material to this action, Pulseworks was responsible for the staffing, operation and management of the simulator exhibit at the defendant Smithsonian Institution's Air & Space Museum in Washington, D.C., under contract with defendant Smithsonian Institution.

7.     Defendant, Smithsonian Institution (the "Smithsonian"), is headquartered in Washington, D.C.  Defendant Smithsonian is the world's largest museum and research complex, operating 19 museums and galleries and the Smithsonian National Zoological Park, including the Air & Space Museum in Washington, D.C.

## FACTUAL ALLEGATIONS

8.      On or about August 20, 2012, Max and Jake Gold traveled from Merrick, NY, to Washington, D.C., to visit the museums in our nation's capital.  Their first stop was at the Smithsonian's Air & Space Museum.

9.      Max suffers from a rare vascular anomaly birth defect that caused his right leg to be amputated as a child, and has left him dependent on a wheelchair.  During all times material to this action, Max was not wearing his prosthetic leg, and was using his motorized wheelchair.

10.     As soon as Max and his brother entered the Air & Space Museum, they immediately noticed signs for a flight simulator exhibit which was located in the main hallway of the Air & Space Museum.

11.     A graduate of the Henry Viscardi School in Albertson, NY, Max is a self-described "aeronautical fanatic," and is currently pursuing a Bachelor's Degree in Aviation Security Systems from the State University of New York at Farmingdale.

12.     Due to his long-held interest in aviation, as well as his past, positive experiences with flight simulators, Max was extremely excited to see the flight simulator exhibit at the Air & Space Museum, and immediately went over to the entrance of the exhibit to pay his admission and try one or both of the simulators.

13.     Upon information and belief, at all times material to this action, defendant Pulseworks operated the flight simulator exhibit at the Air & Space Museum, under contract with defendant Smithsonian.

14.     When Max arrived at the ticket counter for the simulator exhibit, he was greeted by two employees who were in charge of selling tickets for the exhibit.  Upon information and

belief, both employees were employed by defendant Pulseworks, under contract with defendant Smithsonian.

15.     Max noticed that there were two options for flight simulators to try – "Fly" and "Ride."  Max informed one of the employees that he wished to purchase a ticket for one of the "fly" simulators.

16.     In response, the employee informed Max that he could not purchase a ticket or use the "fly" simulator, solely because of Max's disability.  The employee informed Max that the "fly" simulator had a full-body harness, and that riders needed to have both legs in the harness. Because Max had only one leg, the employee informed him that it would be unsafe for him to use the "fly" simulator.

17.     Max and his brother were extremely disappointed, but did not argue with the employee regarding the suitability of the "fly" simulator.  Both employees behind the ticket counter then informed Max that he could, however, use the "ride" simulator, and that it would be safe despite Max's disability.

18.     Upon the employees' recommendation, Max was reinvigorated, purchased a ticket for one of the "ride" simulators, entered the simulator exhibit and took his place in line with his brother.

19.     When Max and his brother reached the first available "ride" simulator, they encountered another employee who explained to Max how the "ride" simulator operated, and what he could expect.  This employee, like the employees at the ticket counter, made no mention to Max of any safety issues regarding Max's use of the "ride" simulator.

20. Upon information and belief, the employee who Max encountered upon arriving at the first available "ride" simulator was also employed by defendant Pulseworks, under contract with defendant Smithsonian.

21. After the employee finished his explanation of the "ride" simulator, Max's brother, Jake, began to pick Max up out of his wheelchair in order to use the simulator.

22. There were several small steps that led from the floor to the entrance of the "ride" simulator. Because Max is confined to a wheelchair and has only one leg, Jake began to pick Max up out of his wheelchair, to place in the "ride" simulator.

23. As soon as Jake began to lift Max out of his wheelchair, a self-identified supervisor came sprinting across the room, screaming at Max and his brother. The supervisor continued yelling at Max and his brother, instructing Jake to put Max down and loudly yelling that Jake could not "put him in there."

24. The supervisor's actions in running across the room and yelling at Max and his brother attracted the attention of the rest of the patrons in the simulator exhibit. Soon everyone in the exhibit was staring at Max and his brother.

25. Upon information and belief, the supervisor was employed by defendant Pulseworks, under contract with defendant Smithsonian.

26. In response to the supervisors' protestations, Jake placed Max back into his wheelchair and asked to speak to another manager and/or supervisor about the "ride" simulator and its accessibility. A second self-identified supervisor then came over, and informed Jake that Max could not use the "ride" simulator, and that the only way that Max could use the simulator was if he was able to "board the simulator himself."

27.     Max and Jake attempted to explain to the second supervisor that Max had only one leg, and could very obviously not board the simulator without assistance.   The second supervisor was undeterred, however, and informed Jake that for insurance reasons, everyone needed to board the simulators under their own volition.   The second supervisor continued to loudly state that "if he can't get into the simulator by himself, than he can't go."

28.     At no time did the second supervisor or any other employee ask Max about the nature of his disability or his limitations.

29.     At no time did the second supervisor or any other employee inform Max that the "ride" simulator was unsafe for Max to use.

30.     Instead, the sole reason provided to Max and his brother by the second supervisor or any other employee for denying Max the ability to use the "ride" simulator was a concern regarding the liability of the museum if something were to happen as Jake was picking Max up and placing him in the simulator.

31.     In response, Jake asked the second supervisor where the handicapped accessible simulator was, if Max was not allowed to use the "ride" or the "fly" simulators.   The second supervisor responded that there was not a handicapped accessible simulator, and offered Jake a refund for Max's ticket.

32.     Humiliated, embarrassed, and disgusted with the experience, Max and Jake accepted the refund and left both the flight simulator exhibit as well as the Air & Space Museum.

33.     During the entire encounter with the second supervisor, the supervisor was extremely rude and insensitive in her dealings with Max and his brother.   She refused to address Max – speaking only to his non-disabled brother – and displayed a complete lack of understanding or sympathy for Max or Jake, or disability laws in general.

34.     Upon information and belief, the second supervisor was employed by defendant Pulseworks, under contract with defendant Smithsonian.

35.     As a direct and proximate result of Defendants', their employees', and agents' discriminatory actions as alleged above, Max and Jake are and were denied equal access and suffered emotional and mental distress, anxiety, humiliation, degradation, public ridicule, and shame.

## COUNT ONE

## Violations of Section 504 of the Rehabilitation Act Against the Smithsonian Institution

## (Max Gold - Executive Agency)

36.     Plaintiffs repeat and reallege paragraphs 1 through 35 as if fully set forth herein.

37.     This Count One is a claim for disability discrimination against defendant Smithsonian Institution for violations of Section 504 of the Rehabilitation Act.

38.     Defendant Smithsonian Institution was and is an "Executive agency" pursuant to the Rehabilitation Act.

39.     Plaintiff Max Gold was and is disabled, as he suffered and suffers from a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, walking.

40.     Max was and is a "qualified individual" pursuant to the Rehabilitation Act.

41.     Defendant Smithsonian Institution and/or its museum, the National Air & Space Museum, are programs and/or activities for purposes of the Rehabilitation Act.

42.     Max would like to be able to visit the Air & Space Museum in the future, and during said visits, would like to use all of the programs and services provided by the museum, including, but not limited to, the flight simulators.

43.     Defendants Smithsonian Institution and Pulseworks, LLC authorized their agents and employees to act for Defendants when they committed the Rehabilitation Act violations alleged herein.     Defendants Smithsonian Institution's and Pulseworks, LLC's agents and employees accepted the undertaking of acting on behalf of Defendants when they committed the Rehabilitation Act violations alleged herein.     Defendants Smithsonian Institution and Pulseworks, LLC had control over their agents and employees when they committed the Rehabilitation Act violations alleged herein.

44.     The Rehabilitation Act violations alleged herein and committed by defendants Smithsonian Institution's and Pulseworks, LLC's agents and employees were done while acting within the course and scope of their employ and/or agency with defendants Smithsonian Institution and Pulseworks, LLC, respectively.     Thus, defendants Smithsonian Institution and Pulseworks, LLC are vicariously liable for the actions of their agents and employees when they committed the Rehabilitation Act violations alleged herein.

45.     Defendant Smithsonian Institution owed and owes Max a nondelegable duty to comply with its obligations under Section 504 of the Rehabilitation Act.     Accordingly, defendant Smithsonian Institution is liable for all discriminatory actions of Pulseworks, LLC complained of herein.

46.     Max requested a reasonable accommodation and his need for a reasonable accommodation was known and obvious.

47.     Defendants Smithsonian Institution and Pulseworks, LLC, their employees, and agents knew and/or should have known of Max's need for a reasonable accommodation.

48.     Defendant Smithsonian Institution, its agents and employees, and/or defendant Pulseworks, LLC, its agents and employees, acted intentionally and/or with deliberate indifference to Max's need for a reasonable accommodation by, among other things:

A.      failing and intentionally refusing to monitor Pulseworks, LLC to ensure Pulseworks, LLC was and is compliant with the mandates of the Rehabilitation Act;

B.      failing and intentionally refusing to ensure that Pulseworks, LLC was and is training its employees with respect to the mandates of the Rehabilitation Act;

C.      failing and intentionally refusing to reasonably accommodate Max and permit his brother to lift him out of his chair and place him into the simulator ride;

D.      failing and intentionally refusing Max access to the simulator rides;

E.      subjecting Max to verbal abuse and demeaning behavior;

F.      failing and intentionally refusing to establish policy and procedures whereby wheel-chair bound individuals are properly accommodated and provided access to the simulator rides;

G.      failing and intentionally refusing to train its agents and/or employees regarding their obligation to provide wheel-chair bound individuals with reasonable accommodations for their disability under the Rehabilitation Act;

H.      failing and intentionally refusing to train its employees and/or agents regarding sensitivity towards those with disabilities;

I. failing and intentionally refusing to consider Max's particular disability when determining whether Max would be permitted to use the simulator rides;

J. failing and intentionally refusing to investigate what accommodations for Max would have been reasonable; and

K. failing and intentionally refusing to reasonably accommodate Max.

49. As a direct and proximate result of defendant Smithsonian Institution, its employees' and agents' failure and intentional refusal to provide Max with an accommodation for his disability, he is and was denied equal access and has had to endure emotional and mental distress, anxiety, humiliation, degradation, public ridicule, and shame.

WHEREFORE, on this Count One, Max Gold respectfully requests this Court to:

A. declare that defendant Smithsonian Institution discriminated against plaintiff Max Gold in violation of Section 504 of the Rehabilitation Act;

B. enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors in office, agents and employees, and all other persons in concert therewith, to immediately change its policies, procedures, and practices, so that plaintiff Max Gold will be able to enjoy the programs and activities at the Air & Space Museum in the future;

C. enter preliminary and permanent injunctive relief enjoining defendant Smithsonian Institution, its successors in office, agents and employees, and all other persons in concert therewith, from taking or continuing any action which has the purpose or effect of discriminating against plaintiff Max Gold by virtue of his physical disabilities;

D.      enter preliminary and permanent injunctive relief enjoining defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, from discriminating on the basis of disability;

E.      enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution to take appropriate affirmative action to ensure that the activities complained of above are not engaged in again by defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it;

F.      enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, to adopt policies, procedures and practices, which will ensure that all disabled individuals may fully enjoy the programs and activities at the Air & Space Museum;

G.      enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, to develop training programs in order to ensure compliance with the Rehabilitation Act;

H.      award Plaintiff Max Gold his costs;

I.      award Plaintiff Max Gold his attorneys' fees in this action pursuant to 29 U.S.C. § 794a; and

J.      grant such other and further relief as the Court deems just and equitable.

## COUNT TWO

## Violations of Section 504 of the Rehabilitation Act Against the Smithsonian Institution

### (Max Gold)
### (Alternative Relief - Non-Executive Agency/Recipient of Federal Financial Assistance)

50.     Plaintiff repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

51.     This Count Two is a claim for disability discrimination against defendant Smithsonian Institution for violations of Section 504 of the Rehabilitation Act.

52.     Defendant Smithsonian Institution and/or its museum, the National Air & Space Museum, were and are recipients of federal funds for purposes of the Rehabilitation Act at all times relevant.

53.     Plaintiff Max Gold was and is disabled, as he suffered and suffers from a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, walking.

54.     Max was and is a "qualified individual" pursuant to the Rehabilitation Act.

55.     Defendant Smithsonian Institution and/or its museum, the National Air & Space Museum, are programs and/or activities for purposes of the Rehabilitation Act.

56.     Max would like to be able to visit the Air & Space Museum in the future, and during said visits, would like to use all of the programs and services provided by the museum, including, but not limited to, the flight simulators.

57.     Defendants Smithsonian Institution and Pulseworks, LLC authorized their agents and employees to act for Defendants when they committed the Rehabilitation Act violations alleged herein.   Defendants Smithsonian Institution's and Pulseworks, LLC's agents and employees accepted the undertaking of acting on behalf of Defendants when they committed the Rehabilitation Act violations alleged herein.   Defendants Smithsonian Institution and

Pulseworks, LLC had control over their agents and employees when they committed the Rehabilitation Act violations alleged herein.

58.     The Rehabilitation Act violations alleged herein and committed by defendants Smithsonian Institution's and Pulseworks, LLC's agents and employees were done while acting within the course and scope of their employ and/or agency with defendants Smithsonian Institution and Pulseworks, LLC, respectively.  Thus, defendants Smithsonian Institution and Pulseworks, LLC are vicariously liable for the actions of their agents and employees when they committed the Rehabilitation Act violations alleged herein.

59.     Defendant Smithsonian Institution owed and owes Max a nondelegable duty to comply with its obligations under Section 504 of the Rehabilitation Act.  Accordingly, defendant Smithsonian Institution is liable for all discriminatory actions of Pulseworks, LLC complained of herein.

60.     Max requested a reasonable accommodation and his need for a reasonable accommodation was known and obvious.

61.     Defendants Smithsonian Institution and Pulseworks, LLC, their employees, and agents knew and/or should have known of Max's need for a reasonable accommodation.

62.     Defendant Smithsonian Institution, its agents and employees, and/or Pulseworks, LLC, its agents and employees, acted intentionally and/or with deliberate indifference to Max's need for a reasonable accommodation by, among other things:

> A.     failing and intentionally refusing to monitor Pulseworks, LLC to ensure Pulseworks, LLC was and is compliant with the mandates of the Rehabilitation Act;

B.     failing and intentionally refusing to ensure that Pulseworks, LLC was and is training its employees with respect to the mandates of the Rehabilitation Act;

C.     failing and intentionally refusing to reasonably accommodate Max and permit his brother to lift him out of his chair and place him into the simulator ride;

D.     failing and intentionally refusing Max access to the simulator rides;

E.     subjecting Max to verbal abuse and demeaning behavior;

F.     failing and intentionally refusing to establish policy and procedures whereby wheel-chair bound individuals are properly accommodated and provided access to the simulator rides;

G.     failing and intentionally refusing to train its agents and/or employees regarding their obligation to provide wheel-chair bound individuals with reasonable accommodations for their disability under the Rehabilitation Act;

H.     failing and intentionally refusing to train its employees and/or agents regarding sensitivity towards those with disabilities;

I.     failing and intentionally refusing to consider Max's particular disability when determining whether Max would be permitted to use the simulator rides;

J.     failing and intentionally refusing to investigate what accommodations for Max would have been reasonable; and

K.     failing and intentionally refusing to reasonably accommodate Max.

63.    As a direct and proximate result of defendant Smithsonian Institution, its employees' and agents' failure and intentional refusal to provide Max with an accommodation for his disability, he is and was denied equal access and has had to endure emotional and mental distress, anxiety, humiliation, degradation, public ridicule, and shame

WHEREFORE, on this Count Two, Max Gold respectfully requests this Court to:

A.    declare that defendant Smithsonian Institution discriminated against plaintiff Max Gold in violation of Section 504 of the Rehabilitation Act;

B.    enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors in office, agents and employees, and all other persons in concert therewith, to immediately change its policies, procedures, and practices, so that plaintiff Max Gold will be able to enjoy the programs and activities at the Air & Space Museum in the future;

C.    enter preliminary and permanent injunctive relief enjoining defendant Smithsonian Institution, its successors in office, agents and employees, and all other persons in concert therewith, from taking or continuing any action which has the purpose or effect of discriminating against plaintiff Max Gold by virtue of his physical disabilities;

D.    enter preliminary and permanent injunctive relief enjoining defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, from discriminating on the basis of disability;

E.      enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution to take appropriate affirmative action to ensure that the activities complained of above are not engaged in again by defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it;

F.      enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, to adopt policies, procedures and practices, which will ensure that all disabled individuals may fully enjoy the programs and activities at the Air & Space Museum;

G.      enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, to develop training programs in order to ensure compliance with the Rehabilitation Act;

H.      award plaintiff Max Gold compensatory damages for, among other things, mental anguish, loss of dignity, and any and all other intangible injuries he suffered as result of defendants Smithsonian Institution's and Pulseworks, LLC's discriminatory actions;

I.      award plaintiff Max Gold pre- and post-judgment interest;

J.      award plaintiff Max Gold his costs;

K.      award plaintiff Max Gold his attorneys' fees in this action pursuant to 29 U.S.C. § 794a; and

L.      grant such other and further relief as the Court deems just and equitable.

## COUNT THREE

### Violations of Title III of the Americans with Disabilities Act Against the Smithsonian Institution

### (Max Gold - Alternative Relief – Executive Agency)

64. Plaintiff repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

65. This Count Three is a claim for disability discrimination against defendant Smithsonian Institution for violations of Title III of the Americans with Disabilities Act.

66. Defendant Smithsonian Institution and/or its museum, the National Air & Space Museum, were and are a public accommodation for purposes of Title III of the Americans with Disabilities Act.

67. Plaintiff Max Gold was and is disabled, as he suffered and suffers from a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, walking.

68. Max was and is a "qualified individual" pursuant to Title III of the Americans with Disabilities Act.

69. Max would like to be able to visit the Air & Space Museum in the future, and during said visits, would like to use the all the goods, services, facilities, privileges, advantages, or accommodations provided by the museum, including, but not limited to, the flight simulators.

70. Defendants Smithsonian Institution and Pulseworks, LLC authorized their agents and employees to act for Defendants when they committed the ADA violations alleged herein. Defendants Smithsonian Institution's and Pulseworks, LLC's agents and employees accepted the undertaking of acting on behalf of Defendants when they committed the ADA violations alleged herein. Defendants Smithsonian Institution and Pulseworks, LLC had control over their agents and employees when they committed the ADA violations alleged herein.

71.     The ADA violations alleged herein and committed by defendants Smithsonian Institution's and Pulseworks, LLC's agents and employees were done while acting within the course and scope of their employ and/or agency with defendants Smithsonian Institution and Pulseworks, LLC, respectively.  Thus, defendants Smithsonian Institution and Pulseworks, LLC are vicariously liable for the actions of their agents and employees when they committed the ADA violations alleged herein.

72.     Defendant Smithsonian Institution owed and owes Max a nondelegable duty to comply with its obligations under Title III of the Americans with Disabilities Act.  Accordingly, defendant Smithsonian Institution is liable for all discriminatory actions of Pulseworks, LLC complained of herein.

73.     Max requested a reasonable accommodation and his need for a reasonable accommodation was known and obvious.

74.     Defendants Smithsonian Institution and Pulseworks, LLC, their employees, and agents knew and/or should have known of Max's need for a reasonable accommodation.

75.     Defendant Smithsonian Institution, its agents and employees, and/or Pulseworks, LLC, its agents and employees, acted intentionally and/or with deliberate indifference to Max's need for a reasonable accommodation by, among other things:

A.     failing and intentionally refusing to monitor Pulseworks, LLC to ensure Pulseworks, LLC was and is compliant with the mandates of Title III of the Americans with Disabilities Act;

B.     failing and intentionally refusing to ensure that Pulseworks, LLC was and is training its employees with respect to the mandates of Title III of the Americans with Disabilities Act;

C.      failing and intentionally refusing to reasonably accommodate Max and permit his brother to lift him out of his chair and place him into the simulator ride;

D.      failing and intentionally refusing Max access to the simulator rides;

E.      subjecting Max to verbal abuse and demeaning behavior;

F.      failing and intentionally refusing to establish policy and procedures whereby wheel-chair bound individuals are properly accommodated and provided access to the simulator rides;

G.      failing and intentionally refusing to train its agents and/or employees regarding their obligation to provide wheel-chair bound individuals with reasonable accommodations for their disability under Title III of the Americans with Disabilities Act;

H.      failing and intentionally refusing to train its employees and/or agents regarding sensitivity towards those with disabilities;

I.      failing and intentionally refusing to consider Max's particular disability when determining whether Max would be permitted to use the simulator rides;

J.      failing and intentionally refusing to investigate what accommodations for Max would have been reasonable; and

K.      failing and intentionally refusing to reasonably accommodate Max.

76.    As a direct and proximate result of defendant Smithsonian Institution, its employees' and agents' failure and intentional refusal to provide Max with an accommodation

for his disability, he is and was denied equal access and has had to endure emotional and mental distress, anxiety, humiliation, degradation, public ridicule, and shame

WHEREFORE, on this Count Three, Max Gold respectfully requests this Court to:

A.     declare that defendant Smithsonian Institution discriminated against plaintiff Max Gold in violation of Title III of the Americans with Disabilities Act;

B.     enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors in office, agents and employees, and all other persons in concert therewith, to immediately change its policies, procedures, and practices, so that plaintiff Max Gold will be able to enjoy the goods, services, facilities, privileges, advantages, or accommodations at the Air & Space Museum in the future;

C.     enter preliminary and permanent injunctive relief enjoining defendant Smithsonian Institution, its successors in office, agents and employees, and all other persons in concert therewith, from taking or continuing any action which has the purpose or effect of discriminating against plaintiff Max Gold by virtue of his physical disabilities;

D.     enter preliminary and permanent injunctive relief enjoining defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, from discriminating on the basis of disability;

E.     enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution to take appropriate affirmative action to ensure

that the activities complained of above are not engaged in again by defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it;

F.      enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, to adopt policies, procedures and practices, which will ensure that all disabled individuals may fully enjoy the goods, services, facilities, privileges, advantages, or accommodations at the Air & Space Museum;

G.      enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, to develop training programs in order to ensure compliance with Title III of the Americans with Disabilities Act;

H.      award Plaintiff Max Gold his costs;

I.      award Plaintiff Max Gold his attorneys' fees in this action pursuant to 42 U.S.C. § 12205; and

J.      grant such other and further relief as the Court deems just and equitable.


## COUNT FOUR

**Violations of the District of Columbia Human Rights Act Against the
Smithsonian Institution**

**(Max Gold - Alternative Relief – Non-Executive Agency)**

77.     Plaintiff repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

78.     This Count Four is a claim for disability discrimination against defendant Smithsonian Institution for violations of the District of Columbia Human Rights Act.

79.     Defendant Smithsonian Institution and/or its museum, the National Air & Space Museum, were and are places of public accommodation for purposes of the District of Columbia Human Rights Act at all times relevant.

80.     Plaintiff Max Gold was and is disabled, as he suffered and suffers from a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, walking.

81.     Max was and is a "qualified individual" pursuant to the District of Columbia Human Rights Act.

82.     Max would like to be able to visit the Air & Space Museum in the future, and during said visits, would like to use the all the goods, services, facilities, privileges, advantages, or accommodations provided by them, including, but not limited to, the flight simulators.

83.     Defendants Smithsonian Institution and Pulseworks, LLC authorized their agents and employees to act for Defendants when they committed the DCHRA violations alleged herein.  Defendants Smithsonian Institution's and Pulseworks, LLC's agents and employees accepted the undertaking of acting on behalf of Defendants when they committed the DCHRA violations alleged herein.  Defendants Smithsonian Institution and Pulseworks, LLC had control over their agents and employees when they committed the DCHRA violations alleged herein.

84.     The District of Columbia Human Rights Act violations alleged herein and committed by defendants Smithsonian Institution's and Pulseworks, LLC's agents and employees were done while acting within the course and scope of their employ and/or agency with defendants Smithsonian Institution and Pulseworks, LLC, respectively.  Thus, defendants

Smithsonian Institution and Pulseworks, LLC are vicariously liable for the actions of their agents and employees when they committed the District of Columbia Human Rights Act violations alleged herein.

85.     Defendant Smithsonian Institution owed and owes Max a nondelegable duty to comply with its obligations under the District of Columbia Human Rights Act.  Accordingly, defendant Smithsonian Institution is liable for all discriminatory actions of Pulseworks, LLC complained of herein.

86.     Max requested a reasonable accommodation and his need for a reasonable accommodation was known and obvious.

87.     Defendant Smithsonian Institution and Pulseworks, LLC, their employees, and agents knew and/or should have known of Max's need for a reasonable accommodation.

88.     Defendant Smithsonian Institution, its agents and employees, and/or Pulseworks, LLC, its agents and employees, acted intentionally and/or with deliberate indifference to Max's need for a reasonable accommodation by, among other things:

    A.     failing and intentionally refusing to monitor Pulseworks, LLC to ensure Pulseworks, LLC was and is compliant with the mandates of the District of Columbia Human Rights Act;

    B.     failing and intentionally refusing to ensure that Pulseworks, LLC was and is training its employees with respect to the mandates of the District of Columbia Human Rights Act;

    C.     failing and intentionally refusing to reasonably accommodate Max and permit his brother to lift him out of his chair and place him into the simulator ride;

  D.  failing and intentionally refusing Max access to the simulator rides;

  E.  subjecting Max to verbal abuse and demeaning behavior;

  F.  failing and intentionally refusing to establish policy and procedures whereby wheel-chair bound individuals are properly accommodated and provided access to the simulator rides;

  G.  failing and intentionally refusing to train its agents and/or employees regarding their obligation to provide wheel-chair bound individuals with reasonable accommodations for their disability under the District of Columbia Human Rights Act;

  H.  failing and intentionally refusing to train its employees and/or agents regarding sensitivity towards those with disabilities;

  I.  failing and intentionally refusing to consider Max's particular disability when determining whether Max would be permitted to use the simulator rides;

  J.  failing and intentionally refusing to investigate what accommodations for Max would have been reasonable; and

  K.  failing and intentionally refusing to reasonably accommodate Max.

89. Defendants Smithsonian Institution and Pulseworks, LLC denied plaintiff Max Gold, directly and/or indirectly, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation.

90. As a direct and proximate result of defendant Smithsonian Institution, its employees' and agents' failure and intentional refusal to provide Max with an accommodation

for his disability, he is and was denied equal access and has had to endure emotional and mental distress, anxiety, humiliation, degradation, public ridicule, and shame.

WHEREFORE, on this Count Four, Max Gold respectfully requests this Court to:

A.   declare that defendant Smithsonian Institution discriminated against plaintiff Max Gold in violation of the District of Columbia Human Rights Act;

B.   enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors in office, agents and employees, and all other persons in concert therewith, to immediately change its policies, procedures, and practices, so that plaintiff Max Gold will be able to enjoy the goods, services, facilities, privileges, advantages, or accommodations at the Air & Space Museum in the future;

C.   enter preliminary and permanent injunctive relief enjoining defendant Smithsonian Institution, its successors in office, agents and employees, and all other persons in concert therewith, from taking or continuing any action which has the purpose or effect of discriminating against plaintiff Max Gold by virtue of his physical disabilities;

D.   enter preliminary and permanent injunctive relief enjoining defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, from discriminating on the basis of disability;

E.   enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution to take appropriate affirmative action to ensure

that the activities complained of above are not engaged in again by defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it;

F.    enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, to adopt policies, procedures and practices, which will ensure that all disabled individuals may fully enjoy the goods, services, facilities, privileges, advantages, or accommodations at the Air & Space Museum;

G.    enter preliminary and permanent injunctive relief requiring defendant Smithsonian Institution, its successors, and its servants, agents and employees, and all those acting in concert with it, to develop training programs in order to ensure compliance with the District of Columbia Human Rights Act;

H.    award plaintiff Max Gold compensatory damages for, among other things, mental anguish, loss of dignity, and any and all other intangible injuries he suffered as result of defendants Smithsonian Institution's and Pulseworks, LLC's discriminatory actions;

I.    award plaintiff Max Gold pre- and post-judgment interest;

J.    award plaintiff Max Gold his costs;

K.    award plaintiff Max Gold his attorneys' fees in this action pursuant to D.C. Code § 2-1403.16(b) and D.C. Code § 2-1403.13(a)(1)(E);

L.    grant such other and further relief as the Court deems just and equitable.

## <u>COUNT FIVE</u>

### <u>Violations of Section 504 of the Rehabilitation Act Against Pulseworks, LLC</u><br><u>(Max Gold)</u>

91.     Plaintiff repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

92.     This Count Five is a claim for disability discrimination against defendant Pulseworks, LLC for violations of Section 504 of the Rehabilitation Act.

93.     Upon information and belief, defendant Pulseworks, LLC was and is a recipient of federal funds for purposes of the Rehabilitation Act at all times relevant.

94.     Plaintiff Max Gold was and is disabled, as he suffered and suffers from a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, walking.

95.     Max was and is a "qualified individual" pursuant to the Rehabilitation Act.

96.     Defendant Pulseworks, LLC and/or its Flight Simulator exhibit at the National Air & Space Museum, are programs and/or activities for purposes of the Rehabilitation Act.

97.     Max would like to be able to visit the Air & Space Museum in the future, and during said visits, would like to use the all programs and services provided by defendant Pulseworks, LLC, including, but not limited to, the flight simulators.

98.     Defendant Pulseworks, LLC authorized its agents and employees to act for defendant Pulseworks, LLC when they committed the Rehabilitation Act violations alleged herein.  Defendant Pulseworks, LLC's agents and employees accepted the undertaking of acting on behalf of defendant Pulseworks, LLC when they committed the Rehabilitation Act violations alleged herein.  Defendant Pulseworks, LLC had control over its agents and employees when they committed the Rehabilitation Act violations alleged herein.

99.     The Rehabilitation Act violations alleged herein and committed by defendant Pulseworks, LLC's agents and employees were done while acting within the course and scope of their employ and/or agency with defendant Pulseworks, LLC.  Thus, defendant Pulseworks, LLC is vicariously liable for the actions of its agents and employees when they committed the Rehabilitation Act violations alleged herein.

100.    Max requested a reasonable accommodation and his need for a reasonable accommodation was known and obvious.

101.    Defendant Pulseworks, LLC, its employees, and agents knew and/or should have known of Max's need for a reasonable accommodation.

102.    Defendant Pulseworks, LLC, its agents and employees, acted intentionally and/or with deliberate indifference to Max's need for a reasonable accommodation by, among other things:

    A.     failing and intentionally refusing to permit Max's brother to lift him out of his chair and place him into the simulator ride;

    B.     failing and intentionally refusing Max access to the simulator rides;

    C.     subjecting Max to verbal abuse and demeaning behavior;

    D.     failing and intentionally refusing to establish policy and procedures whereby wheel-chair bound individuals are properly accommodated and provided access to the simulator rides;

    E.     failing and intentionally refusing to train its employees regarding its obligation to provide wheel-chair bound individuals with reasonable accommodations for their disability under the Rehabilitation Act;

F.     failing and intentionally refusing to train its employees regarding sensitivity towards those with disabilities;

G.     failing and intentionally refusing to consider Max's particular disability when determining whether Max would be permitted to use the simulator ride;

H.     failing and intentionally refusing to investigate what accommodations for Max would have been reasonable; and

I.     failing and intentionally refusing to reasonably accommodate Max.

103.   In engaging in this unlawful conduct described above, defendant Pulseworks, LLC acted with evil intent, malice, wantonness, and lucre to damage the rights and feelings of plaintiff Max Gold.

104.   As a direct and proximate result of defendant Pulseworks, LLC, its employees' and agents' failure and intentional refusal to provide Max with an accommodation for his disability, he is and was denied equal access and has had to endure emotional and mental distress, anxiety, humiliation, degradation, public ridicule, and shame.

WHEREFORE, on this Count Five, Max Gold respectfully requests this Court to:

A.     declare that defendant Pulseworks, LLC discriminated against plaintiff Max Gold in violation of Section 504 of the Rehabilitation Act.

B.     enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors in office, agents and employees, and all other persons in concert therewith, to immediately change its policies, procedures, and practices, so that plaintiff Max Gold will be able to enjoy

Pulseworks, LLC's programs and activities at the Air & Space Museum in the future;

C.      enter preliminary and permanent injunctive relief enjoining defendant Pulseworks, LLC, its successors in office, agents and employees, and all other persons in concert therewith, from taking or continuing any action which has the purpose or effect of discriminating against plaintiff Max Gold by virtue of his physical disabilities;

D.      enter preliminary and permanent injunctive relief enjoining defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it, from discriminating on the basis of disability;

E.      enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC to take appropriate affirmative action to ensure that the activities complained of above are not engaged in again by defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it;

F.      enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it, to adopt policies, procedures and practices, which will ensure that all disabled individuals may fully enjoy Pulseworks, LLC's programs and activities at the Air & Space Museum;

G.      enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors, and its servants, agents and employees,

and all those acting in concert with it, to develop training programs in order to ensure compliance with Section 504 of the Rehabilitation Act;

H.      award plaintiff Max Gold compensatory damages for, among other things, mental anguish, loss of dignity, and any and all other intangible injuries he suffered as result of defendant Pulseworks, LLC's discriminatory actions;

I.      award plaintiff Max Gold punitive damages against defendant Pulseworks, LLC;

J.      award plaintiff Max Gold pre- and post-judgment interest;

K.      award plaintiff Max Gold his costs;

L.      award plaintiff Max Gold his attorneys' fees in this action pursuant to 29 U.S.C. § 794a; and

M.      grant such other and further relief as the Court deems just and equitable.


## COUNT SIX

### Violations of Title III of the Americans with Disabilities Act Against Pulseworks, LLC
### (Max Gold)

105.    Plaintiff repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

106.    This Count Six is a claim for disability discrimination against defendant Pulseworks, LLC for violations of Title III of the Americans with Disabilities Act.

107.    Under information and belief, defendant Pulseworks, LLC owns and operates the Flight Simulators at the defendant Smithsonian Institution's National Air & Space Museum.

108.    Defendant Pulseworks, LLC's operations at the Air & Space Museum, including, but not limited to the Flight Simulator exhibit, constitute a public accommodation for purposes of Title III of the Americans with Disabilities Act.

109.    Plaintiff Max Gold was and is disabled, as he suffered and suffers from a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, walking.

110.    Max was and is a "qualified individual" pursuant to Title III of the Americans with Disabilities Act.

111.    Max would like to be able to visit the Air & Space Museum in the future, and during said visits, would like to use the all the goods, services, facilities, privileges, advantages, or accommodations provided by defendant Pulseworks, LLC, including, but not limited to, the flight simulators.

112.    Defendant Pulseworks, LLC authorized its agents and employees to act for defendant Pulseworks, LLC when they committed the ADA violations alleged herein.  Defendant Pulseworks, LLC's agents and employees accepted the undertaking of acting on behalf of defendant Pulseworks, LLC when they committed the ADA violations alleged herein.  Defendant Pulseworks, LLC had control over its agents and employees when it committed the ADA violations alleged herein.

113.    The Title III of the Americans with Disabilities Act violations alleged herein and committed by defendant Pulseworks, LLC's agents and employees were done while acting within the course and scope of their employ and/or agency with defendant Pulseworks, LLC. Thus, defendant Pulseworks, LLC is vicariously liable for the actions of its agents and employees when they committed the Title III of the Americans with Disabilities Act violations alleged herein.

114.    Max requested a reasonable accommodation and his need for a reasonable accommodation was known and obvious.

115.     Defendant Pulseworks, LLC, its employees, and agents knew and/or should have known of Max's need for a reasonable accommodation.

116.     Defendant Pulseworks, LLC, its agents and employees, acted intentionally and/or with deliberate indifference to Max's need for a reasonable accommodation by, among other things:

    A.    failing and intentionally refusing to permit Max's brother to lift him out of his chair and place him into the simulator ride;

    B.    failing and intentionally refusing Max access to the simulator rides;

    C.    subjecting Max to verbal abuse and demeaning behavior;

    D.    failing and intentionally refusing to establish policy and procedures whereby wheel-chair bound individuals are properly accommodated and provided access to the simulator rides;

    E.    failing and intentionally refusing to train defendant Pulseworks, LLC's employees regarding its obligation to provide wheel-chair bound individuals with reasonable accommodations for their disability under Title III of the Americans with Disabilities Act;

    F.    failing and intentionally refusing to train defendant Pulseworks, LLC's employees regarding sensitivity towards those with disabilities;

    G.    failing and intentionally refusing to consider Max's particular disability when determining whether Max would be permitted to use the simulator ride;

    H.    failing and intentionally refusing to investigate what accommodations for Max would have been reasonable; and

I.      failing and intentionally refusing to reasonably accommodate Max.

117.    In engaging in this unlawful conduct described above, defendant Pulseworks, LLC acted with evil intent, malice, wantonness, and lucre to damage the rights and feelings of Max.

118.    As a direct and proximate result of defendant Pulseworks, LLC, its employees' and agents' failure and intentional refusal to provide Max with an accommodation for his disability, he is and was denied equal access and has had to endure emotional and mental distress, anxiety, humiliation, degradation, public ridicule, and shame.

WHEREFORE, on this Count Six, Max Gold respectfully requests this Court to:

A.      declare that defendant Pulseworks, LLC discriminated against plaintiff Max Gold in violation of Title III of the Americans with Disabilities Act.;

B.      enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors in office, agents and employees, and all other persons in concert therewith, to immediately change its policies, procedures, and practices, so that plaintiff Max Gold will be able to enjoy Pulseworks, LLC's goods, services, facilities, privileges, advantages, or accommodations at the Air & Space Museum in the future;

C.      enter preliminary and permanent injunctive relief enjoining defendant Pulseworks, LLC, its successors in office, agents and employees, and all other persons in concert therewith, from taking or continuing any action which has the purpose or effect of discriminating against plaintiff Max Gold by virtue of his physical disabilities;

D.     enter preliminary and permanent injunctive relief enjoining defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it, from discriminating on the basis of disability;

E.     enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC to take appropriate affirmative action to ensure that the activities complained of above are not engaged in again by defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it;

F.     enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it, to adopt policies, procedures and practices, which will ensure that all disabled individuals may fully enjoy Pulseworks, LLC's goods, services, facilities, privileges, advantages, and accommodations at the Air & Space Museum;

G.     enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it, to develop training programs in order to ensure compliance with Title III of the Americans with Disabilities Act;

H.     award plaintiff Max Gold his costs;

I.     award plaintiff Max Gold his attorneys' fees in this action pursuant to 42 U.S.C. § 12205; and

J.      grant such other and further relief as the Court deems just and equitable.

## COUNT SEVEN

## Violations of the District of Columbia Human Rights Act Against Pulseworks, LLC (Max Gold)

119.    Plaintiff repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

120.    This Count Seven is a claim for disability discrimination against defendant Pulseworks, LLC for violations of the District of Columbia Human Rights Act.

121.    Upon information and belief, defendant Pulseworks, LLC owns and operates the Flight Simulators at the defendant Smithsonian Institution's National Air & Space Museum.

122.    Defendant Pulseworks, LLC's operations at the Air & Space Museum, including, but not limited to the Flight Simulator exhibit, constitute a public accommodation for purposes of the District of Columbia Human Rights Act.

123.    Plaintiff Max Gold was and is disabled, as he suffered and suffers from a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, walking.

124.    Max was and is a "qualified individual" pursuant to the District of Columbia Human Rights Act.

125.    Max would like to be able to visit the Air & Space Museum in the future, and during said visits, would like to use the all the goods, services, facilities, privileges, advantages, and accommodations provided by defendant Pulseworks, LLC, including, but not limited to, the flight simulators.

126.    Defendant Pulseworks, LLC authorized its agents and employees to act for defendant Pulseworks, LLC when they committed the DCHRA violations alleged herein. Defendant Pulseworks, LLC's agents and employees accepted the undertaking of acting on

behalf of defendant Pulseworks, LLC when they committed the DCHRA violations alleged herein.   Defendant Pulseworks, LLC had control over its agents and employees when it committed the DCHRA violations alleged herein.

127.   The District of Columbia Human Rights Act violations alleged herein and committed by defendant Pulseworks, LLC's agents and employees were done while acting within the course and scope of their employ and/or agency with defendant Pulseworks, LLC. Thus, defendant Pulseworks, LLC is vicariously liable for the actions of its agents and employees when they committed the District of Columbia Human Rights Act violations alleged herein.

128.   Max requested a reasonable accommodation and his need for a reasonable accommodation was known and obvious.

129.   Defendant Pulseworks, LLC, its employees, and agents knew and/or should have known of Max's need for a reasonable accommodation.

130.   Defendant Pulseworks, LLC, its agents and employees, acted intentionally and/or with deliberate indifference to Max's need for a reasonable accommodation by, among other things:

> A.   failing and intentionally refusing to permit Max's brother to lift him out of his chair and place him into the simulator ride;
>
> B.   failing and intentionally refusing Max access to the simulator rides;
>
> C.   subjecting Max to verbal abuse and demeaning behavior;
>
> D.   failing and intentionally refusing to establish policy and procedures whereby wheel-chair bound individuals are properly accommodated and provided access to the simulator ride;

E.     failing and intentionally refusing to train its employees regarding its obligation to provide wheel-chair bound individuals with reasonable accommodations for their disability under the District of Columbia Human Rights Act;

F.     failing and intentionally refusing to train its employees regarding sensitivity towards those with disabilities;

G.     failing and intentionally refusing to consider Max's particular disability when determining whether Max would be permitted to use the simulator ride;

H.     failing and intentionally refusing to investigate what accommodations for Max would have been reasonable; and

I.     failing and intentionally refusing to reasonably accommodate Max.

131.   Defendant Pulseworks, LLC denied Max, directly and/or indirectly, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation.

132.   Max has been and is aggrieved by defendant Pulseworks, LLC's unlawful discriminatory practices.

133.   In engaging in this unlawful conduct described above, defendant Pulseworks, LLC acted with evil intent, malice, wantonness, and lucre to damage the rights and feelings of plaintiff Max Gold.

134.   As a direct and proximate result of defendant Pulseworks, LLC, its employees' and agents' failure and intentional refusal to provide Max with an accommodation for his

disability, he is and was denied equal access and has had to endure emotional and mental distress, anxiety, humiliation, degradation, public ridicule, and shame..

WHEREFORE, on this Count Seven, Max Gold respectfully requests this Court to:

A.    declare that defendant Pulseworks, LLC discriminated against plaintiff Max Gold in violation of the District of Columbia Human Rights Act.

B.    enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors in office, agents and employees, and all other persons in concert therewith, to immediately change its policies, procedures, and practices, so that plaintiff Max Gold will be able to enjoy Pulseworks, LLC's goods, services, facilities, privileges, advantages, and accommodations at the Air & Space Museum in the future;

C.    enter preliminary and permanent injunctive relief enjoining defendant Pulseworks, LLC, its successors in office, agents and employees, and all other persons in concert therewith, from taking or continuing any action which has the purpose or effect of discriminating against plaintiff Max Gold by virtue of his physical disabilities;

D.    enter preliminary and permanent injunctive relief enjoining defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it, from discriminating on the basis of disability;

E.    enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC to take appropriate affirmative action to ensure that the activities complained of above are not engaged in again by defendant

Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it;

F.   enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it, to adopt policies, procedures and practices, which will ensure that all disabled individuals may fully enjoy defendant Pulseworks, LLC's goods, services, facilities, privileges, advantages, and accommodations at the Air & Space Museum;

G.   enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it, to develop training programs in order to ensure compliance with the District of Columbia Human Rights Act;

H.   award plaintiff Max Gold compensatory damages for, among other things, mental anguish, loss of dignity, and any and all other intangible injuries he suffered as result of defendant Pulseworks, LLC's discriminatory actions;

I.   award plaintiff Max Gold punitive damages against Pulseworks, LLC;

J.   award plaintiff Max Gold pre- and post-judgment interest;

K.   award plaintiff Max Gold his costs;

L.   award plaintiff Max Gold his attorneys' fees in this action pursuant to D.C. Code § 2-1403.16(b) and D.C. Code § 2-1403.13(a)(1)(E); and

M.   grant such other and further relief as the Court deems just and equitable.

## COUNT EIGHT

### Violations of the District of Columbia Human Rights Against Pulseworks, LLC
### (Jake Gold)

135.    Plaintiff repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

136.    This Count Seven is a claim for disability discrimination against defendant Pulseworks, LLC for violations of the District of Columbia Human Rights Act.

137.    Upon information and belief, defendant Pulseworks, LLC owns and operates the Flight Simulators at the defendant Smithsonian Institution's National Air & Space Museum.

138.    Defendant Pulseworks, LLC's operations at the Air & Space Museum, including, but not limited to the Flight Simulator exhibit, constitute a public accommodation for purposes of the District of Columbia Human Rights Act.

139.    Plaintiff Max Gold was and is disabled, as he suffered and suffers from a physical impairment that substantially limits one or more of his major life activities, including, but not limited to, walking.

140.    Throughout plaintiff Jake Gold's life, Jake was and is Max's caregiver for certain purposes.

141.    Max was and is a "qualified individual" pursuant to the District of Columbia Human Rights Act.

142.    Max and Jake would like to be able to visit the Air & Space Museum in the future, and during said visits, would like to use the all the goods, services, facilities, privileges, advantages, and accommodations provided by defendant Pulseworks, LLC, including, but not limited to, the flight simulators.

143.    Jake would like to accompany Max during said visits, and Max requires Jake's company in order to provide him equal access to defendant Pulseworks, LLC's goods, services, facilities, privileges, advantages, and accommodations.

144.    Defendant Pulseworks, LLC authorized its agents and employees to act for defendant Pulseworks, LLC when they committed the DCHRA violations alleged herein. Defendant Pulseworks, LLC's agents and employees accepted the undertaking of acting on behalf of defendant Pulseworks, LLC when they committed the DCHRA violations alleged herein.   Defendant Pulseworks, LLC had control over its agents and employees when it committed the DCHRA violations alleged herein.

145.    The District of Columbia Human Rights Act violations alleged herein and committed by defendant Pulseworks, LLC's agents and employees were done while acting within the course and scope of their employ and/or agency with defendant Pulseworks, LLC. Thus, defendant Pulseworks, LLC is vicariously liable for the actions of its agents and employees when they committed the District of Columbia Human Rights Act violations alleged herein.

146.    Max and Jake requested a reasonable accommodation and their need for a reasonable accommodation was known and obvious.

147.    Defendant Pulseworks, LLC, its employees, and agents knew and/or should have known of Max and Jake's need for a reasonable accommodation.

148.    Defendant Pulseworks, LLC, its agents and employees, acted intentionally and/or with deliberate indifference to Max and Jake's need for a reasonable accommodation by, among other things:

A.      failing and intentionally refusing to permit Jake to lift Max out of his chair and place him into the simulator ride;

B.      failing and intentionally refusing Jake and Max access to the simulator ride;

C.      subjecting Jake and Max to verbal abuse and demeaning behavior;

D.      failing and intentionally refusing to establish policy and procedures whereby wheel-chair bound individuals and their caregivers are properly accommodated and provided access to the simulator ride;

E.      failing and intentionally refusing to train its employees regarding its obligation to provide wheel-chair bound individuals and their caregivers with reasonable accommodations for their disability under the District of Columbia Human Rights Act;

F.      failing and intentionally refusing to train its employees regarding sensitivity towards those with disabilities and their caregivers;

G.      failing and intentionally refusing to consider Max's particular disability when determining whether Max and Jake would be permitted to use the simulator ride;

H.      failing and intentionally refusing to investigate what accommodations for Max and Jake would have been reasonable; and

I.      failing and intentionally refusing to reasonably accommodate Jake and Max.

149.    Defendant Pulseworks, LLC denied plaintiffs Max and Jake Gold, directly and/or indirectly, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation.

150.    Jake has been and is aggrieved by Pulseworks, LLC's unlawful discriminatory practices.

151.    In engaging in this unlawful conduct described above, defendant Pulseworks, LLC acted with evil intent, malice, wantonness, and lucre to damage the rights and feelings of plaintiff Jake Gold.

152.    As a direct and proximate result of defendant Pulseworks, LLC's employees' and agents' failure and intentional refusal to provide Jake and Max with an accommodation for his disability, they are and were denied equal access and has had to endure emotional and mental distress, anxiety, humiliation, degradation, public ridicule, and shame.

WHEREFORE, on this Count Seven, Jake Gold respectfully requests this Court to:

A.    declare that plaintiff Jake Gold was and is aggrieved by defendant Pulseworks, LLC in violation of the District of Columbia Human Rights Act.

B.    enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors in office, agents and employees, and all other persons in concert therewith, to immediately change its policies, procedures, and practices, so that plaintiff Jake Gold will be able to assist Max Gold so that they may enjoy defendant Pulseworks, LLC's goods, services, facilities, privileges, advantages, and accommodations at the Air & Space Museum in the future;

C.      enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC to take appropriate affirmative action to ensure that the activities complained of above are not engaged in again by defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it;

D.      enter preliminary and permanent injunctive relief requiring defendant Pulseworks, LLC, its successors, and its servants, agents and employees, and all those acting in concert with it, to develop training programs in order to ensure compliance with the District of Columbia Human Rights Act;

E.      award plaintiff Jake Gold compensatory damages for mental anguish, loss of dignity, and any and all other intangible injuries he suffered as result of defendant Pulseworks, LLC's discriminatory actions;

F.      award plaintiff Jake Gold punitive damages against defendant Pulseworks, LLC;

G.      award plaintiff Jake Gold pre- and post-judgment interest;

H.      award plaintiff Jake Gold his costs;

I.      award plaintiff Jake Gold his attorneys' fees in this action pursuant to D.C. Code § 2-1403.16(b) and D.C. Code § 2-1403.13(a)(1)(E); and

J.      grant such other and further relief as the Court deems just and equitable.


## **JURY DEMAND**

Plaintiffs demand trial by jury on all issues that can be heard by a jury.

Respectfully submitted,

Shawn A. Heller, Esq.
District of Columbia Bar No. 985899
shawn@sjlawcollective.com

Social Justice Law Collective, PL
P.O. Box 70327
Washington, DC 20024
(202) 709-5744
(866) 893-0416 (Fax)

Attorneys for the Plaintiffs


By:   _s/ Shawn A. Heller_____
          Shawn A. Heller, Esq.